ROSS, RECEIVER, ET AL. *v.* FEAR-CAMPBELL COMPANY.

[No. 12,104.   Filed May 12, 1925.   Rehearing denied October 15, 1925.
Transfer denied January 31, 1929.]

*VanBrunt & Harker*, for appellants.
*Earl F. Gruber*, for appellee.

McMAHAN, J.—From a judgment in favor of appellee for damages occasioned by a delay in the transportation of a carload of dressed poultry, appellants appeal, and assign as error the overruling of their motion for a new trial.

Appellee insists that no question is presented for our decision because appellants' briefs do not comply with the rules of this court. But we are of the opinion that all questions necessary to a determination of the appeal are fairly presented.

The first two specifications in the motion for a new trial are that the verdict is not sustained by sufficient evidence, and is contrary to law. The shipment was billed from Veedersburg, Indiana, to Newark, New Jersey, with stop-over at Frankfort to finish loading. The bill of lading provided that except in case of negligence of the carrier, the carrier "shall not be liable for loss, damage or delay resulting from riots or strikes," and that "the burden to prove freedom from such negligence shall be on the carrier." The car was routed over the Erie Railroad from Ohio City, Ohio, to Newark, and was delivered by the initial carrier without any delay, but while the car was in the possession of the Erie Railroad, there was a delay of five or six days in transporting it. Appellants do not deny the delay. Their contention is that the delay resulted from a strike and that it was not caused by the negligence of appellants or of the Erie Railroad. There was a delay of one day at Marion, Ohio, two nights and a day at Kent, Ohio, and five days at Salamanca, New York.

The evidence, without conflict, shows that the employees of the Erie Railroad went out on a strike after the car of poultry had been delivered to that company and that the delay was due to the strike. Appellants, in order to show freedom from negligence, proved that practically all of the employees of the Erie Railroad, including conductors, train men, engineers, firemen, yard switchmen and shop employees ceased work April 10, 1920, and instituted what is known as the "Outlaw Strike." That such employees were not discharged, but that they voluntarily quit work;

that the railroad tried to get the striking employees to return to their work but was not able to get any of the men to return to work until the day before the strike ended, when two of the switchmen at Salamanca returned to work. This was in the afternoon of April 17. April 18, the car started out of Salamanca for the point of the destination without delay. There is evidence showing that the freight traffic east of Ohio City was greatly congested because of the strike. Without giving a detailed statement of the evidence, it, without conflict, shows the freedom of the carrier from any negligence contributing to or causing the delay.

Appellee contends that the car remained at Marion for twenty-four hours, at a time when there was no strike at that point. The car of poultry reached Marion about noon April 10. The strike began at Salamanca at 9 a. m. that day, when the entire force quit work; about 1,300 cars were taken out of trains and set in on switches and side tracks on the Marion division April 10, and later that number was increased to about 2,000. Large numbers of cars were set out at other points on the railroad, and the movement of cars east from Salamanca stopped on April 10, and did not start again until April 18. The only reasonable inference to be drawn from the evidence is that the railroad was not guilty of any negligence in the matter. The evidence all points to freedom from negligence. That the jury did not give the evidence fair consideration is evidenced by the fact that it returned a verdict for $2,500 which is about $350 more than the amount appellee in its briefs claim it was entitled to recover. The court, before overruling appellant's motion for a new trial, required appellee to remit $750, which was done, and the court then rendered a judgment for $1,750. It is clear that appellants did not receive just and fair treatment from the jury. As before stated, the

only fair and legitimate inference to be drawn from the evidence is that the delay was not caused by any negligence on the part of the carrier. The jury, however, was not only willing to return a verdict for appellee but to give it more than it asked.

Appellants also contend that the court erred in the admission of certain evidence. The bill of lading, among other things, contained a provision reading as follows: "Except where the loss, damage, or injury complained of is due to delay or damage while being loaded or unloaded, or damage in transit by carelessness or negligence, as conditions precedent to recovery, claims must be made in writing to the originating or delivering carrier within six months after delivery of the property."

The evidence which appellants claim was erroneously introduced tended to show that appellee made claim for the loss occasioned by the delay within the time designated.

Appellee's damages having been caused by a delay, but with no evidence that it was caused by any *negligence* on the part of the carrier, appellee, under the facts now before us, was not required to make or present a claim in writing before commencing suit. This being true, appellants were not harmed by the admission of the evidence. See *Barrett* v. *Van Pelt* (1925), 268 U. S. 85, 45 Sup. Ct. 437, 69 L. Ed. 857.

Appellee made out a statement of its claim and mailed the same to the originating carrier, and, in connection with the statement of the claim, it mailed a statement wherein appellee claimed the poultry would have sold for $9,058.06 if it had arrived at its destination on time; that appellee paid $267.24 for expenses occasioned by the delay and that the balance due appellee, after deducting amount for which the poultry was sold, was $2,102.92. There was also attached to this claim a statement made by a commission-

man at Newark, giving an itemized account of what the different classes of poultry and eggs in the car sold for. There were also what purported to be statements from certain merchants for feed sold to the man in charge of the poultry, and indicating that feed to the amount named in the statements had been sold to and paid for by appellee. On objection being made to the admission of this evidence, appellee's counsel announced that the only purpose of introducing it was to prove that appellee had presented its claim for damages to the railroad company. The statement as to what the poultry and eggs sold for, purported to state the number of pounds of the several kinds of poultry and the number of dozens eggs that were sold, the selling price, the amount each class sold for, and the aggregate of all sales. While it is true appellee's counsel stated that the only purpose for which this and the other statements were being introduced was to prove the presentation of the claim to the carrier, it is apparent that this statement was used by the court and jury in calculating the amount of recovery, as there is no other evidence in the record from which such a calculation can be made. The only other evidence in the record pertaining to the amount for which the poultry and eggs sold was the testimony of a commissionman, who testified as to the prices per pound for which the several classes of poultry sold, and the price per dozen for which the eggs sold. There is no evidence as to the number of pounds of poultry sold, the number of dozens eggs sold, or the amount realized from the sale. This statement was used by appellee in making out the statement concerning what the poultry would have sold for if the shipment had not been delayed, in calculating the amount of its claim. There being no evidence other than the itemized statement purporting to show what the shipment sold for from which the court or jury could determine the amount of recovery, we hold it was re-

versible error to admit this statement in evidence.

Appellants also contend there was error in the admission of other evidence and in the giving and refusal to give certain instructions, but since these questions are not liable to arise on a retrial of the cause, we do not deem it necessary to decide them.

Judgment reversed, with directions to sustain the motion for a new trial and for further proceedings.